IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SABRINA YOVICH,                                      CIVIL DIVISION

    Plaintiff,                                      Case No.     1:20-cv-159

    v.

EXECUTOOL PRECISION TOOLING, INC.,

    Defendant.

## COMPLAINT AND JURY DEMAND

A.     *Preliminary Statement*

1.     The plaintiff Sabrina Yovich brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination and retaliation based upon her gender.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.     *Jurisdiction*

2.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.      On or about December 10, 2019, the plaintiff timely filed a charge alleging harassment and discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2020-00602.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.     The EEOC issued a Notice of Right to Sue on June 8, 2020.

5.     This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.    ***The parties***

6.    The plaintiff Sabrina Yovich is an adult individual who resides at 12871 Rt. 19 Sout, Apt A, Waterford, Erie County, PA 16441.

7.    The defendant Executool Precision Tooling, Inc. ("Executool" or the "company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district.   The defendant maintains a place of business at 2727 West 16th Street, Erie, Erie County, PA 16505.

8.    At all times material, the defendant employed more than fifteen employees.

9.    The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.    ***Factual Background***

10.    The plaintiff was employed by Executool from May 11, 2015 through September 6, 2019, at which time her employment was terminated. At the time of her discharge, her job was Administrative Assistant/Product Controller.

11.    The plaintiff's duties as Administrative Assistant/Product Controller included processing orders, sending quotes to customers, keeping track of employees' hours, filing and other administrative duties.

12.    At all times relevant, the plaintiff performed the functions of her job competently and efficiently and was considered to be a satisfactory employee.

13.    The owner of Executool is Gary Mayes.  His wife, Susan Mayes, is the front office manager.  His daughter, Alicia Damore, is in charge of human resources.  His son, Kyle Mayes, works in the tooling area.

14.    While the plaintiff was employed by the company, she was subjected to a sexually hostile environment in the workplace on account of her gender, including inappropriate comments and unwelcome sexual advances by Gary Mayes as further detailed herein.

15.    At the beginning, Gary Mayes seemed to limit himself to gender-based comments in the workplace, for example often lacing his comments and statements with flirty or smutty double entendres, making misogynistic pronouncements like "it's about time you women are on board" and "cleaning is a woman's job."  In late June 2018, shortly after the plaintiff started working in the front office, Mayes started calling her "Yo Btich", a sexist and derogatory play on her last name, "Yovich".  Although this conduct was inappropriate in a work setting and unwelcome by the plaintiff, she had to put up with it, especially since Mayes was the owner of the company.  However, starting in April 2019, Mayes' conduct crossed the line from being merely sexually rude and boorish to sexually harassing and sexually hostile.

16.    The plaintiff was involved in a relationship with Gregory Burek, a co-worker at Executool.  Burek was a long-time employee of the company and was friends with Gary Mayes. This relationship between Burek and the plaintiff was known to Mayes and the company's employees and did not interfere with work.  Further, there was no company policy forbidding co-workers from dating.  In the spring of 2019, the plaintiff and Burek were having problems with their relationship.  The plaintiff moved out of the apartment that they shared and decided to separate for a while.  Despite the problems with their relationship, they did not cause any drama at work and did not cause any problems.  This was made easier because Burek worked on the floor and the plaintiff worked in the front office.

17.     On approximately April 15, 2019, Gary Mayes asked the plaintiff about her relationship with Gregory Burek.  She responded that they weren't seeing each other at the present time and that she had not been living with him for about a month or so.

18.     On April 18, Susan Mayes and Alicia Damore asked the plaintiff to bring her puppy to work.  Gary Mayes had a ball for the dog to play with and repeatedly threw it at the plaintiff throughout the day.  At one point, the plaintiff was bent over to get files out of a cabinet.  Gary Mayes threw the ball at her buttocks.  Surprised, she turned around and said, "Excuse me?" He said that her "ass was a target" that he couldn't miss.

19.     On April 22, 2019, the plaintiff brought in some pies left over from Easter.  Gary Mayes took a slice and said, "I ate Sabrina's pie" a reference to oral sex.  He thought that was very humorous and repeated it over and over throughout the day.

20.     On June 8, 2019, the plaintiff was on a houseboat with a co-worker having drinks. The co-worker was taking photographs and sending them via Snapchat.  Apparently, Gary Mayes was among those to whom the co-worker sent various "Snapchats", including photographs of the plaintiff. Mayes sent messages to the plaintiff, urging her to send him a picture.  She was in her bathing suit and posted a picture on her "Snapchat Story", which he was able to access. However, he did not stop there; he told her to "take off more clothes" and send him more photographs.  Bobbi Bryan, a co-worker present at the time, told the plaintiff that Mayes is "very flirtatious".

21.     Less than a week later, on approximately June 14, 2019, the plaintiff was at the drive-in with her son when Gary Mayes sent messages to her via Snapchat asking her if she was going to get drunk that night.  He messaged that he likes "drunk Sabrina" best because "she's more fun."  He badgered her for more pictures.  He also asked if the plaintiff and Greg were back

together.   He then messaged "so do you wanna suck my cock or 'nah".   The plaintiff was shocked by this message and responded, "whoa!"

22.   On June 16, 2019, Gary Mayes again sent messages to the plaintiff, asking her for more pictures, specifically, pictures of her "ass".  He said that he sees her ass a lot during work, but "it's covered". (Apparently, Mayes spent a lot of time during work looking at the plaintiff's buttocks; her co-workers told her that they often saw him just staring at it). Mayes also sent a message, telling the plaintiff that, if she and Burek were still not together, he was "interested in having some fun" with her, an invitation and request for sex.

23.   The following day, Monday, June 17, 2019, Gary Mayes complained to the plaintiff that he did not get any pictures from her the previous night.  The plaintiff felt extremely awkward and uncomfortable about the situation because Mayes was the owner of the company and she could not figure out a good way to tell him that she was not interested in him.  She feared that she would lose her job if she told him to leave her alone.

24.   On June 18, 2019, Gary Mayes again complained that she had not sent him any pictures.  The plaintiff responded that she was back with Gregory Burek (which was true; they had decided to get back together and work on their relationship).

25.   In an attempt to send the right "message" to Gary Mayes, the plaintiff started telling his daughter and wife – almost on a daily basis – that she was back with Gregory Burek trying to work things out.  She also said these things when Mayes was in earshot, hoping that he would hear this and stop coming on to her.  It didn't work.

26.   Gary Mayes continued to sexually harass the plaintiff and was getting increasingly frustrated that she would not respond favorably to his advances.  On June 28, 2019,

5

Mayes was talking to his son, Kyle Mayes, by the plaintiff's desk. He said, "all girls are cunts and psycho".

27.     On June 30, 2019, the plaintiff decided to talk to Gregory Burek about this situation and about how Gary Mayes made her feel uncomfortable at work. Understandably, Burek was upset at this news. He told the plaintiff that he was going to confront Mayes about the snapchat messages and was going to tell him that the plaintiff's sister took pictures of the snapchats and saved them. (Snapchat messages "disappear" after being sent and viewed; they are not stored on the phone and there is no way to retrieve them other than to take photographs before they "self-delete"). Burek confronted Mayes about it the next day. Mayes tried to justify his conduct by telling Greg that the plaintiff snapchatted with him regularly and sent him "provocative" photos. In other words, Mayes blamed the plaintiff for his sexual harassment.

28.     Gregory Burek relayed what Gary Mayes told him to the plaintiff. The next day, July 1, 2019, the plaintiff decided to confide in Bobbi Bryan about her situation. The plaintiff knew that Mayes had sent sexually suggestive snapchats to Bobbi in the past and hoped that she would provide her with some insight on how to deal with him.

29.     Without the plaintiff's knowledge or permission, Bobbi Bryan told Alicia Damore – Gary Mayes' daughter – about the situation. The plaintiff was horrified that Bryan did this; the plaintiff did not want to tell Damore about this because she feared being retaliated against. Unfortunately, however, the "cat was out of the bag" and things turned for the worse.

30.     The next day, July 2, 2019, Gary Mayes pulled the plaintiff into an empty dark conference room (he did not turn on the lights in the room). He was upset that the plaintiff had told Gregory Burek about the snapchatting and referred to the fact that his daughter knew about the situation. He said that he was going to be on vacation with his wife next week and that he

6

was giving the plaintiff that time to "decide what he should do". He suggested that she should quit and put pressure on her to do so, promising that he would provide a good reference. He said that he was going to have to tell his wife about the situation because his daughter and his son know about it now. The plaintiff asked if he was firing her. He said no, but "I don't know what to do." He kept asking her what he should do. He said that his wife would not want the plaintiff "here after she finds out".

31.     Later that day, Greg Burek arranged to have a meeting with the plaintiff, Gary Mayes and himself. Alicia Damore wanted to attend the meeting as well, but Burek and Mayes did not want her to be involved, so the two of them sat down with the plaintiff to discuss the situation. During the meeting Mayes admitted to snapchatting with the plaintiff and making inappropriate comments. The plaintiff asked Mayes why he had told Burek that she had sent provocative pictures when she had not, he said that the plaintiff sent him a photograph of her in her "bra and underwear". The plaintiff told Mayes that she had not done that; the photograph she sent was of her in her bathing suit while she was on the houseboat with co-workers. Burek asked Mayes why he was snapchatting with the plaintiff in the first place and he responded that he thought the plaintiff was "suicidal" and he was concerned, so he wanted to "befriend" her and say things to make her "feel better".

32.     Also, later on July 2, 2019, Gary Mayes again told the plaintiff that he was not going to fire her, but he strongly recommended that she look for another job while he was on vacation with his wife and that he would give her a good reference.

33.     On July 6, 2019, Gary Mayes sent a snapchat to the plaintiff asking her if she was okay and "just because things blew up" doesn't mean that she was "out". He told her that he still wanted to have "some fun" with her. The plaintiff did not open the message until July 8 with

Gregory Burek present so that he could read what it said before it "self-deleted". Burek sent Mayes a text confronting him about it. At first Gary Mayes denied it and then later said that his "phone must have typed something else that he didn't mean".

34.    Fearing that the "handwriting was on the wall" and that she would get fired for refusing Gary Mayes' advances, the plaintiff requested to take the remaining balance of her vacation. Alicia Damore asked why she wanted to take her vacation. The plaintiff responded that she didn't know what was going to happen with her job. Alicia Damore then demanded to know why the plaintiff had kept her father's snapchats. She was very upset about the possibility of proof of her father's inappropriate statements being in the plaintiff's possession. The plaintiff did not tell Damore that copies of the snapchats did not exist; instead, she said that she wanted to keep them because she did not know what his intentions were.

35.    While Gary and Susan Mayes were away on vacation, the plaintiff took time to think about what she was going to do. She wanted to keep her job, so she decided she would talk to Gary Mayes and Alicia Damore when Mayes came back from vacation and tell them that she was uncomfortable working in the front office with him and his family and that she would request that her office be moved.

36.    On July 15, 2019, Gary and Susan Mayes returned from their vacation. The plaintiff decided that she was not comfortable with having Gary Mayes present while she made the request to move her office, so she met with Alicia Damore in her office alone. She told Damore that she was not comfortable being in the office with Damore's father, especially on the days when Damore and others left early. She did not want to be in the office with Mayes alone until the end of her shift. Damore told the plaintiff that Mayes had not told her mother about the

8

situation yet.  She also said that she would talk to her father about the plaintiff's request to move her office.

37.    The plaintiff made a couple of attempts via text messages to Alicia Damore to find out the status of her request over the following days.  Finally, on July 24, 2019, Damore met with the plaintiff in the conference room.  She started off by saying that she and her father were a "little confused" about why the plaintiff wanted to move her office "all of the sudden" since the incidents with Mayes happened "a while ago".  The plaintiff told Damore that she had made the request over a week ago with no response and that it has not been all that long since all of the problems arose.  She reiterated that she was not comfortable being around her father and the rest of the family.  She also repeated that she was not comfortable being alone with Mayes on the days when everyone else left early. Damore said that she was not going to move the plaintiff's office.  She said that she and her father felt that Gregory Burek is the one who put her up to this and that he was the only one that was upset and uncomfortable with the plaintiff working in the office in close proximity to her father.  The plaintiff said that was not the case; her boyfriend had nothing to do with her decision. Damore refused to believe this and brought up that the plaintiff should quit.

38.    On July 26, 2019, the plaintiff rearranged the desk in her office to be away from the line of sight of Gary Mayes.  Alicia Damore made snide remarks about that.  Damore's treatment of the plaintiff had changed for the worse since she learned about her father's sexual harassment of the plaintiff.  She seemed determined to protect her father, not the plaintiff.

39.    Starting on July 29, 2019, Gary Mayes started calling the plaintiff "Yo Bitch" again and attempted to joke around with the plaintiff, but she tried not to "take the bait".  Further, Alicia Damore continued to be very sullen and cold with the plaintiff.

9

40.     On September 6, 2019, the plaintiff was called into a meeting with Alicia Damore and Ed Dobson, the Molding Manager.  Dobson told the plaintiff that she was being terminated.  The plaintiff asked why.  Dobson only said "for various reasons" but refused to be specific.  The plaintiff also asked Damore why she was being terminated.  Damore avoided the question and refused to answer.  Instead, she stood up and walked out of the conference room.

41.     The plaintiff was subjected to a hostile work environment and was sexually harassed by Gary Mayes while she was employed by the company.  The plaintiff was retaliated against when she did not submit to Mayes' sexual advances and was further retaliated against when the issues were brought to the attention of Alicia Damore.  Instead of doing a proper investigation and taking appropriate, necessary and needed actions to stop the sexual harassment, Damore did everything she could to "protect" her father and to punish the plaintiff.

42.     The reason given for the plaintiff's termination was nothing more than a pretext.  The real reason why she was fired was because of her gender.

## FIRST CAUSE OF ACTION

43.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

44.     The plaintiff is female and thus is protected against harassment and discrimination on the basis of her gender under Title VII.

45.     The plaintiff was qualified for her position.

46.     As detailed above, the plaintiff was harassed in the workplace because of her gender.

47.     Despite her qualifications, the plaintiff was discharged.

10

48.     The defendant's harassment and discharge of the plaintiff were in violation of Title VII because it was based upon her gender.

49.     In addition to harassment and discrimination based on gender, the company retaliated against the plaintiff for engaging in protected activity, i.e., reporting the sexual harassment to management.  A motivating factor for the plaintiff's termination was retaliation for raising issues regarding Gary Mayes' ongoing sexual harassment.

50.     The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

**SECOND CAUSE OF ACTION**

51.     The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

52.     As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination, harassment and retaliation under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

53.     The defendant's violations of the PHRA were committed with intentional or reckless disregard for the plaintiff's protected rights under the PHRA.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,


*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated: June 22, 2020